IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AUDRA M. HUENEFELD, | : | Case No. 1:08cv844 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | |
| | : | |
| SHELTER CONCEPTS | : | |
| MANAGEMENT CORP., *et al.* | : | |
| | : | |
| Defendants. | : | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| CINDY SCHLIE, | : | |
| | : | Case No. 1:09cv308 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANTS' |
| SHELTER CONCEPTS | : | MOTION TO CONSOLIDATE |
| MANAGEMENT CORP., *et al.* | : | ACTIONS FOR TRIAL |
| | : | |
| Defendants. | : | |
| | : | |

This matter comes before the Court on Defendants' Motion to Consolidate Actions (doc. 38). For the following reasons, the Court **GRANTS** Defendants' Motion.

**I.     BACKGROUND**

Defendant Shelter Concepts Management Corp. manages rental property in Cincinnati, Ohio. Plaintiff Audra Huenefeld formerly was employed by Shelter Concepts as a property manager for Arrowhead Apartments. Huenefeld alleges in her Complaint that she and Robert Westlake, the president of Shelter Concepts, had a consensual sexual relationship from 2002 until April 2005, at which time Huenefeld ended the relationship. Huenefeld alleges that

Westlake (and Shelter Concepts, through Westlake) sexually harassed her from April 2005 until her constructive discharge in May 2008. Huenefeld filed a lawsuit against Shelter Concepts and Westlake in December 2008 alleging sexual harassment in violation of state and federal law.

Shelter Concepts also employed Plaintiff Cindy Schlie. Schlie worked as the assistant property manager of Arrowhead Apartments. Schlie alleges that, in February 2008, she told Westlake she was tired of him harassing Huenefeld and that, consequently, Westlake became upset and told Schlie that he was suspending her for two weeks and reducing her salary. Schlie immediately resigned. In May 2009, Schlie filed a lawsuit against Shelter Concepts and Westlake alleging retaliation in violation of state and federal law.

Huenefeld and Schlie are sisters. They are represented by the same counsel. Of the sixteen "Factual Allegations" made to support Schlie's Complaint, all but three are nearly identical to allegations made in Hunefeld's Complaint and focus on the relationship between Huenefeld and Westlake. Schlie resigned from her position with Shelter Concepts in February 2008 after allegedly facing retaliation for opposing Westlake's sexual harassment of Huenefeld. Huenefeld resigned from her position with Shelter Concepts three months later after allegedly being sexually harassed by Westlake for three years.

The two cases were consolidated for the purposes of discovery. Defendants now request that they be consolidated for trial as well to avoid duplication and waste. Huenefeld and Schlie oppose consolidation on grounds that it will result in prejudice and possible jury confusion.

## II.  DISCUSSION

Consolidation is governed by Federal Rule of Civil Procedure 42(a), which provides in pertinent part that "[i]f actions before the court involve a common question of law or fact, the

2

court may . . . join for hearing or trial any or all matters at issue in the actions." Fed. R. Civ. P. 42(a). As recently summarized by the District Court,

> [t]he underlying purpose of the Rule is to promote economy in the administration of justice. Any savings of litigant and judicial resources achieved by consolidation must be balanced against any prejudice to the parties, including potential confusion of the issues, which might result from consolidation. It is not a prerequisite to consolidation that there be a complete identity of legal and factual issues posed in the cases which are the subject of the request. Rather, as long as there are some common questions of either law or fact, the Court has the flexibility under Rule 42 to allow cases to proceed jointly with respect to such matters in which joint proceedings would not be unduly prejudicial and would be an effective utilization of judicial resources.

*MacLean v. Evans, Mechwart, Hambleton & Tilton, Inc.*, Nos. 2:09cv521, 522, 523, 529, 2009 WL 2983072 at *1 (S.D. Ohio Sept. 14, 2009) (internal citations omitted).

Consolidation is a matter within the discretion of the trial court. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). A trial court deciding whether to consolidate must consider the following:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Defendants argue that the above factors weigh in favor of consolidation. Both Plaintiff's cases arise from a common set of facts and involve the same parties, and Defendants suggest that a consolidated trial of both lawsuits will increase the likelihood of consistent factual and legal

3

findings. Defendants also state that consolidation will prevent the burden on the parties, witnesses, and all available judicial resources posed by separate trials. Specifically, many witnesses do not reside in this District and will have to travel to appear at trial. Consolidation of the trials would enable them to travel and testify once instead of twice. Also, if held individually, Huenefeld's trial is expected to take two to three weeks and Schlie's trial is expected to take one week. If done together, the total trial time will be reduced given the substantial overlap of the facts relevant to both lawsuits.

Plaintiffs respond that Huenefeld's and Schlie's claims are distinct and that a trial of both cases to the same jury could cause significant confusion and result in prejudice to one or both Plaintiffs. They state that although both claims relate to alleged harassment by Westlake, the proof required for the claims is substantially different. Namely, to prevail on her retaliation claim, Schlie need not prove the elements of Huenefeld's harassment claim; she must prove only that she opposed what she reasonably believed was illegal activity.[1] Plaintiffs state that if a jury finds that Westlake is not guilty of illegal sexual harassment, it is difficult to imagine how that same jury could decide that Schlie reasonably believed he *was* guilty of it, even if the facts as they relate solely to Schlie and her knowledge support such a belief. Plaintiffs also state that the fact they are sisters will be used by Defendants to imply a unity of interests and to blur the distinctions between the Plaintiffs and their claims.

---

[1] *See* doc. 39 at 2 ("[A] violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful. . . . [The claimant] must only have a good faith belief that the practice is unlawful." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000)).

4

In addition to confusing the jury, Plaintiffs argue that consolidating the cases for trial will lead to serious evidentiary issues. Plaintiffs note that what Westlake says Huenefeld told him is generally admissible in Huenefeld's case but may be inadmissible hearsay in Schlie's case, and vice versa. For example, Westlake testified in deposition that Schlie told him privately that Westlake and Huenefeld "love each other" — which Schlie denies. Plaintiffs say this testimony may be admissible in Schlie's case but is hearsay in Huenefeld's case and that a curative instruction from the court telling the jury the purpose for which the statement is offered will not be effective. The result, argue Plaintiffs, would be that Defendants would be permitted to introduce otherwise inadmissible hearsay testimony throughout the trial from a variety of witnesses.

The Court has considered the arguments both in favor and against consolidation and concludes that, on balance, any risk of juror confusion or prejudice to the parties is outweighed by the risk of inconsistent adjudications of common factual issues; the burden on parties, witnesses and available judicial resources posed by separate lawsuits; and the length of time required to conclude two suits as against a single one. Defendants anticipate that every witness likely to be called in the trial of Schlie's case also will be called in Huenefeld's case. Both cases revolve around Westlake's interaction with Huenefeld. Huenefeld alleges that numerous specific acts committed by Westlake constituted sexual harassment; Schlie claims that one of these acts prompted her to tell Westlake that his harassment of Huenefeld had to stop. Huenefeld was present when Schlie told Westlake that she quit.

Contrary to Plaintiffs' suggestion, the Court does not find it "difficult to imagine" that — if supported by competent, credible evidence — a reasonable jury could conclude that Westlake

5

was not guilty of illegal sexual harassment but that Schlie believed he *was* guilty of it based on her perceptions and the information she received from others. The Court has no reason to believe that jurors will be unable to separate what Schlie heard or experienced firsthand from what Huenefeld heard or experienced firsthand.

It is true that the legal issues in Schlie's and Huenefeld's cases are not the same. However, the different legal issues must be resolved out of a common set of facts. To require witnesses to tell the same story — that of Westlake's conduct toward Huenefeld over a period of at least three years — twice to different juries so that one jury can decide whether Huenefeld was subjected to sexual harassment and the other jury can decide whether Westlake retaliated against Schlie for opposing what she reasonably believed was sexual harassment, would be inefficient. Worse, if the testimony of a witness at the second trial differs even slightly from the testimony of that same witness at the first trial, counsel will doubtless impeach that testimony with the transcript of testimony presented at the first trial, and perhaps also the deposition testimony of that witness. Presenting a second jury with two or three versions of witness testimony from each of numerous witnesses would be not only time consuming but confusing.

The better course is to present one jury with the facts that form the basis of both Plaintiffs' claims at one time. That Plaintiffs each must prove different elements to succeed in their claims does not alter this conclusion. Indeed, even a single plaintiff who brings a suit alleging multiple claims must prove different elements to succeed on those claims. This does not require a different jury to be called in to decide each of the claims. Counsel will have the opportunity to provide proposed jury instructions to the Court, and the Court has confidence in a

jury's ability to understand the instructions and fairly and impartially apply the law to the facts presented at trial.

To the extent some testimony might be hearsay as to one Plaintiff but not the other, the Court anticipates that a limiting instruction will address any potential juror confusion. Furthermore, whether any given statement is hearsay at all will depend on the purpose for which it is being admitted. The Court will resolve any such evidentiary issues during the course of the trial.

### III. CONCLUSION

Consolidating these two cases for trial will save the Court, witnesses, and parties time and money, and it will prevent the possibility of inconsistent findings of fact and the effect such inconsistencies would have on the outcomes of the trials. For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Consolidate Actions (doc. 38).

IT IS SO ORDERED.

*Susan J. Dlott*

Chief Judge Susan J. Dlott
United States District Court

7